UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| KAREN BELL; A.P. BELL FISH COMPANY, INC.; WILLIAM COPELAND,<br><br>Plaintiffs,<br><br>v.<br><br>GINA RAIMONDO, in her official capacity as Secretary of the United States Department of Commerce; JANET COIT, in her official capacity as Assistant Administrator for the National Marine Fisheries Service; and NATIONAL MARINE FISHERIES SERVICE,<br><br>Defendants. | No. 1:23cv160 HSO-BWR<br><br>**COMPLAINT** |

**INTRODUCTION**

1. Plaintiffs are individuals and a family-owned business that fish in the Gulf of Mexico. Among the fish that they rely on are greater amberjack, a reef fish.

2. A regulation issued by the National Marine Fisheries Service has slashed the number of greater amberjack available to Plaintiffs by nearly 80%.

3. This regulation, however, was unlawfully promulgated. Under the relevant rulemaking provisions, the National Marine Fisheries Service is only permitted to promulgate a final rule that has been approved by a federal policymaking body called the Gulf of Mexico Fishery Management Council.

4. The Gulf Council, however, has not approved the rule at issue. While individuals purporting to hold Council seats voted in favor of the rule, they were

1

never appointed to the Council pursuant to the Appointments Clause of the Constitution, which is the exclusive method of filling Council seats. These individuals therefore never wielded the Council's power, and their actions qua Council members are void.

5. Without the Council's approval, the National Marine Fisheries Service was not empowered to issue the regulation. The Court should therefore vacate the regulation.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); *id.* § 2201 (authorizing declaratory relief); *id.* § 2202 (authorizing injunctive relief); 16 U.S.C. § 1855(f) (providing for judicial review of Magnuson-Stevens Act regulations pursuant to the Administrative Procedure Act); and *id.* § 1861(d) (providing district court jurisdiction over cases arising under the Magnuson-Stevens Act); *see also Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010).

7. Venue in the Southern District of Mississippi is proper pursuant to 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to the claim occurred in the District.

## PARTIES

*Plaintiffs*

8. Plaintiff Karen Bell lives in Cortez, Florida. Ms. Bell owns 26.8% of Plaintiff A.P. Bell Fish Company, Inc. ("A.P. Bell"), serves as trustee for a trust that

owns 46.6% of A.P. Bell, and is the President of A.P. Bell. Ms. Bell's grandfather started the company over 100 years ago and it has remained in the family until today.

9. Plaintiff A.P. Bell is a commercial fishing, fish processing, and wholesale and retail fish distribution business located in Cortez, Florida. A.P. Bell possesses the necessary permits to catch greater amberjack in the Gulf of Mexico and runs a fleet of commercial fishing boats, including 11 reef fishing boats.

10. A.P Bell's boats actively catch greater amberjack during the season. In 2022, A.P. Bell's boats collectively landed 3,248 pounds of greater amberjack. In 2023, A.P. Bell's boats collectively have landed 378 pounds of greater amberjack as of June 18, 2023. It would have fished for more, but on June 18, 2023, the final rule's reduction in commercial greater amberjack quota forced the fishery to close for the season. A.P. Bell also buys greater amberjack from independent boats for resale as part of its wholesale business. A.P. Bell intends to continue to fish for greater amberjack to the extent permitted by law and to buy greater amberjack from independent boats.

11. Plaintiff William Copeland lives in Port Richey, Florida. He is a commercial fisherman who works in the fisheries managed by the Council. He possesses the vessel, gear, and permit necessary to fish for greater amberjack. He has fished for greater amberjack in the past, and he intended to fish for greater amberjack this year, before the quota reductions created by the final rule forced a closure. He would fish for greater amberjack if the final rule were vacated. He intends to fish for greater amberjack in future years as well.

*Defendants*

12. Gina Raimondo is the Secretary of Commerce and is charged with administering the Magnuson-Stevens Act. She is sued in her official capacity only.

13. Janet Coit is the Assistant Administrator for Fisheries, which directs the National Marine Fisheries Service. The Secretary of Commerce has delegated to the NOAA Administrator the authority to administer the relevant portions of the Act; and the NOAA Administrator has subdelegated that authority to the Assistant Administrator. Pursuant to that authority, the Assistant Administrator determined that the final rule is consistent with applicable law. She is sued in her official capacity only.

14. The National Marine Fisheries Service ("NMFS"), also known as NOAA Fisheries, is an agency within the Department of Commerce. NMFS is responsible for the promulgation of the final rule. 88 Fed. Reg. 39,193 (June 15, 2023) ("Final Rule").

## FACTUAL ALLEGATIONS

15. Plaintiffs fish in the waters managed by the Council. Karen Bell and A.P. Bell are particularly reliant on fishing for their income.

16. Plaintiffs hold permits to fish for Gulf of Mexico reef fish, which includes greater amberjack.

17. The federal fisheries of the Gulf of Mexico are governed, in part, by the Fishery Management Plan ("FMP") for the Reef Fish Resources of the Gulf of Mexico ("Reef FMP"). The Reef FMP regulates and manages greater amberjack and other

reef fish. Under the Plan, the Annual Catch Limits ("ACLs") of greater amberjack are divided between recreational and commercial fishermen.

18. Seventeen individuals purporting to hold Council seats voted to amend the Reef FMP in October 2022 at a meeting in Biloxi, Mississippi. The amendment is known as Amendment 54.

19. On March 2, 2023, NMFS announced the availability of Amendment 54 to the Reef FMP and requested comments. 88 Fed. Reg. 13,077 (Mar. 2, 2023).

20. Amendment 54 lowered the total greater amberjack Acceptable Biological Catch from 1,794,000 pounds to 505,000 pounds and revised the sector allocations in favor of the recreational fishermen. Previously, the sector allocations were 27% of the overall quota for the commercial sector and 73% for the recreational sector. Amendment 54 lowered the commercial sector allocation to 20% and raised the recreational sector allocation to 80%. These decisions resulted in a revised commercial ACL of 101,000 pounds and a revised recreational ACL of 404,000 pounds. *Id.* at 13,079. The Acceptable Catch Targets (the actual quotas under which fishermen operate after a buffer is applied to reduce the risk of hitting the ACL) were reduced even further, to only 93,930 pounds for the entire commercial sector.

21. NMFS determined Amendment 54 was lawful on May 26, 2023. 88 Fed. Reg. at 39,194.

22. The putative Council members also approved a proposed regulation to implement Amendment 54. After their approval, NMFS determined the proposed rule

5

was lawful and, on March 10, 2023, published the proposed rule for comment. 88 Fed. Reg. 14,964.

23. On June 15, 2023, NMFS published the Final Rule implementing Amendment 54. The changes—which reflect a nearly 80% decrease in the commercial catch limit for greater amberjack—are effective June 15, 2023. The changes to recreational quotas and ACLs are effective July 17, 2023.

24. Because NMFS found that the harvest of greater amberjack had already exceeded the new quota, NMFS announced on June 16, 2023, that the commercial harvest of greater amberjack in federal waters of the Gulf of Mexico would close at 12:01 a.m. on June 18, 2023, until the 2024 fishing year begins on January 1, 2024.[1]

## LEGAL BACKGROUND

### Federal Fisheries Management

25. In the United States, the state and federal governments share authority to regulate ocean fisheries. States govern nearshore waters, from the shoreline to three nautical miles (nine nautical miles in the case of Texas and the west coast of Florida), while federal authority extends from the state seaward boundary to 200 nautical miles offshore.

26. Federal fisheries are regulated principally through the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. §§ 1801–91d (the

---

[1] *Commercial Harvest of Greater Amberjack in Federal Waters of the Gulf of Mexico Will Close on June 18, 2023*, NOAA Fisheries (June 16, 2023), https://gulfcouncil.org/press/2023/commercial-harvest-of-greater-amberjack-in-federal-waters-of-the-gulf-of-mexico-will-close-on-june-18-2023/.

6

"Magnuson-Stevens Act" or "Act"). The Act's purpose is to provide a framework for the management of fisheries to maximize their long-term benefits, including for commercial fishermen. *See* 16 U.S.C. §§ 1801, 1851.

27. This purpose is realized through FMPs and FMP amendments, which are developed by the eight Regional Fishery Management Councils and then approved as lawful by the Secretary or her delegate. *See id.* §§ 1852, 1854(a).

28. The Secretary may assist in the councils' development of FMPs through "advisory guidelines," but these guidelines "shall not have the force and effect of law." *Id.* § 1851(b).

29. Approved FMPs and FMP amendments are implemented through regulations, which are proposed by the regional councils and then approved as lawful and promulgated by the Secretary or her delegate. *See id.* §§ 1853(c), 1854(b).

30. Although FMPs, FMP amendments, and implementing regulations are subject to the Secretary's approval, she may only reject a measure if it violates applicable law; she is not empowered to object to these measures on policy grounds. *See id.* § 1854(a)(3), (b)(1).

31. The Secretary must consult with the Council before making any revisions to the Council's proposed regulations, *id.* § 1854(b)(3), but the Secretary has no authority to compel a consultation. *See Oceana, Inc. v. Ross*, No. 17-cv-5146, Docket No. 124, at 8–9 (C.D. Cal. Nov. 18, 2019) (government brief) ("NMFS has repeatedly attempted to consult with the Pacific Council," but "NMFS lacks the

authority to *compel* the independent Pacific Council to place this item on its agenda or deliberate further on this subject.").

32. The Secretary has delegated her authority under the Act to approve as lawful FMPs, FMP amendments, and implementing regulations to the NOAA Administrator, who has delegated his authority to the Assistant Administrator for Fisheries. NOAA, NOAA Organizational Handbook: Transmittal No. 61, at PDF 2–3 (Feb. 24, 2015) ("NOAA Handbook"). The Assistant Administrator for Fisheries is neither nominated by the President nor confirmed by the Senate.

33. The Assistant Administrator has further sub-delegated rulemaking powers to the NMFS Deputy Assistant Administrator for Regulatory Programs ("DAARP"). *See* NOAA Handbook at 5. The DAARP, who manages policy and regulations within NMFS, may exercise these rulemaking powers without the concurrence of the Assistant Administrator or other senior officials. The current DAARP is Samuel D. Rauch III, a career civil servant.

34. Mr. Rauch approved the Final Rule for publication in the Federal Register.

**Regional Fishery Management Councils**

35. The Gulf of Mexico Fishery Management Council ("Council") is one of eight regional fishery management councils established by the Magnuson-Stevens Act. The Magnuson-Stevens Act created the Council to be an independent policymaking body and to manage fisheries in federal waters seaward of the state boundaries of Texas, Louisiana, Mississippi, Alabama, and Florida. 16 U.S.C. §

1852(a)(1)(E) (the Council "*shall have authority over* the fisheries in the Gulf of Mexico" (emphasis added)).

36. The Council is an independent entity within the Executive Branch, not contained within any other agency or Executive Department.

37. The Council has 17 voting members. *Id.* A quorum is a majority of the Council, and the Council acts by majority vote of those present and voting. *Id.* § 1852(e)(1).

38. The Act provides that one voting member of the Council is "[t]he regional director of [NMFS] for the geographic area concerned, or his designee . . . ." *Id.* § 1852(b)(1)(B). The relevant official here is the Regional Administrator for NMFS's Southeast Regional Office.

39. The Southeast Regional Administrator has not been appointed by the President, a head of department, or a court of law.

40. The Southeast Regional Administrator is a career official in the Senior Executive Service. He is therefore removable only for cause. 5 U.S.C. §§ 3592, 7541–43.

41. The Act also provides that five voting members of the Council are the principal state officials with marine fishery management responsibility and expertise in each constituent state, who are designated as such by the governors or their respective states, so long as the officials continue to hold such position, or the designees of such officials. *See* 16 U.S.C. § 1852(b)(1)(A).

42. The Act does not permit the President or the Secretary to remove the five state officials from the Council.

43. The Act provides that the remaining eleven members are nominated by the governors of Texas, Louisiana, Mississippi, Alabama, and Florida. *Id.* § 1852(b)(2)(C). The Secretary must select from the governors' nominees for these eleven seats. *Id.* § 1852(a)(1)(E).

44. One member must be appointed from each member state, and the remaining six at-large members may be appointed from any member-state governor's list of nominees. *See id.*; 50 C.F.R. § 600.215(a)(2)(iii). The governors may provide as few as three nominees for each vacancy. 16 U.S.C. § 1852(b)(2)(C).

45. The Secretary may reject a slate of nominees for a position only if the nominees fail to satisfy certain minimal objective qualifications provided by statute, in which case the governor may revise the list or resubmit the original list with additional explanations of the individuals' qualifications. *Id.* The Secretary may not reject a slate of nominees on the basis of the nominees' judgment, policy prescriptions, or character. *See id.*

46. The Secretary has delegated appointment of these Council seats to the NOAA Administrator. The NOAA Administrator has, in turn, delegated this appointment power to the Assistant Administrator for Fisheries. The Assistant Administrator fills these eleven seats.

47. The Act permits the Secretary to remove a governor-nominated member only if the Council first recommends removal by a two-thirds majority of voting

members and states the basis for the recommendation, or the member violates § 1857(1)(O), a financial conflict-of-interest provision. *Id.* § 1852(b)(6).

### The Appointments Clause

48. The Appointments Clause of the United States Constitution provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint" all "Officers of the United States." U.S. Const. art. II, § 2, cl. 2.

49. This requirement applies to both principal (non-inferior) officers and inferior officers, except that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.*

50. The Clause's main purpose is to ensure that government officials wielding significant authority are accountable to the President and other democratically accountable officers.

51. "[A]ny appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by" the Appointments Clause. *Buckley v. Valeo*, 424 U.S. 1, 126, 140–41 (1976) (per curiam).

52. The Appointments Clause is not limited to officials with authority to "enter a final decision" on behalf of the United States; it applies to any official who "exercise[s] significant discretion" in "carrying out . . . important functions." *Freytag v. Comm'r*, 501 U.S. 868, 881–82 (1991).

53. Rulemaking is a significant authority which only an officer may exercise. *Buckley*, 424 U.S. at 140–41.

54. A person exercising officer powers may be appointed as an inferior officer if his "work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Edmond v. United States*, 520 U.S. 651, 663 (1997).

55. A "timely" petitioner challenging a final action of an improperly appointed officer, if successful, is "entitled" to "whatever relief may be appropriate," including having the action set aside. *See Ryder v. United States*, 515 U.S. 177, 182–83 (1995) (The de facto officer doctrine does not apply where the Appointments Clause is at issue, because it is a "basic constitutional protection[] designed in part for the benefit of litigants." (citation omitted)).

## DECLARATORY AND INJUNCTIVE RELIEF ALLEGATIONS

56. Each of the Plaintiffs has a significant interest in whether the Final Rule was lawfully promulgated. The Final Rule significantly reduces greater amberjack fishing opportunities for all Plaintiffs, with the financial impacts that follow, in addition to reducing the value of their permits, vessels, and gear. A decision declaring the Secretary's promulgation of the Final Rule's quota allocations was unlawful and is therefore void would remedy these injuries by preserving the value of Plaintiffs' assets and enabling Plaintiffs to continue to catch these species at their current rates.

57. Plaintiffs have no plain, speedy, and adequate remedy at law for their injuries. Money damages in this case are not available.

58. This case is currently justiciable because the Final Rule reduced the commercial catch limits of greater amberjack beginning on June 15, 2023.

## CLAIM FOR RELIEF
*Unlawful Issuance of a Final Rule by the National Marine Fisheries Service*
**(U.S. Const. art. II, § 2, cl. 2; 16 U.S.C. § 1855(f); 5 U.S.C. § 706(2))**

59. The preceding paragraphs are incorporated herein by reference.

60. Council seats are offices of the United States and so may be filled only pursuant to the Appointments Clause, because the Council seats are continuing positions vested with significant authority pursuant to the laws of the United States, including rulemaking powers.

61. Council seats are continuing offices established by law. *See* 16 U.S.C. § 1852. The positions themselves are established by statute and continue in perpetuity. *Id.* Eleven members serve, continuously, for a term of three years, which can be extended for up to three consecutive terms. *Id.* § 1852(b)(3). The Act provides that the five state Governor designees serve "so long as the official continues to hold such position [as the principal state official with marine fishery management responsibility and expertise]"—in other words, indefinitely. *Id.* § 1852(b)(1)(A). The Regional Administrator also serves indefinitely.

62. Under the Magnuson-Stevens Act, the Secretary has no discretionary authority over the FMPs or FMP amendments. The Secretary must, upon receiving an FMP or FMP amendment prepared by a Council, immediately review it for consistency with statutorily defined national standards and applicable law. 16 U.S.C.

§ 1854(a)(1)(A). The Secretary can only disapprove, fully or partially, an FMP or FMP amendment prepared by a Council for inconsistency with an applicable law, and must then report such inconsistency to the Council. *Id.* § 1854(a)(3). If the Secretary does not make such a report, the FMP or amendment automatically goes into effect, as if it had been approved by the Secretary. *Id.* § 1854(a)(3)(C). The Secretary cannot reject an amendment for policy reasons.

63. Proposed Council regulations may be blocked only for inconsistency with law, not policy. *See id.* § 1854(b). Thus, under the Act, the Council and its members are endowed with significant authority to make federal fishery policy.

64. The Council also possesses significant authority because it decides when the rulemaking process starts, its decisions have an independent effect because it is the Council's handiwork that is implemented if approved, the Council assembles the record on which any ultimate final rule is based, and the Council may block Secretarial actions on policy grounds.

*Unlawful Principal Officers*

65. Council members must be appointed as principal officers because they are not effectively supervised by anyone who is appointed by the President with the advice and consent of the Senate. By design, the Council is insulated from the President and other executive officers. Council members are not removable at will but rather enjoy extraordinarily strong protections against removal. *See id.* § 1852(b)(6). They have wide discretion over policy decisions. *See id.* § 1854(a)(3), (b). And they operate largely independent of external direction: they set their own

priorities, establish and direct their own staff, and create their own operating procedures. *Id.* § 1852(e), (g)–(i).

66. Council members must be appointed as principal officers for an independent reason. Because the Council is a freestanding entity within the Executive Branch, it constitutes an Executive department for constitutional purposes, and the Council members collectively constitute a head of a department. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 511 (2010). Heads of departments, by definition, must be appointed as principal officers. *Freytag*, 501 U.S. at 884.

67. Despite the requirement that they be appointed as principal officers, the putative Council members were not appointed through presidential nomination and Senate confirmation. The putative Council members therefore exercise their powers unconstitutionally.

*Unlawful Inferior Officers—Appointment by Constitutionally Ineligible Persons*

68. Even if Council members need only be appointed as inferior officers, such appointment has not taken place.

69. The default appointment procedure for inferior officers is presidential appointment with Senate confirmation. *Edmond*, 520 U.S. at 660.

70. The Constitution permits Congress to loosen this requirement only within strict limits: Congress may only vest the appointment of inferior officers in the President, the courts of law, or the heads of departments; and Congress must do so "by Law." U.S. Const. art. II, § 2, cl. 2.

71. Congress has not vested the appointment of Council members in the President, a court of law, or a head of department. Accordingly, even if Council members need only be appointed as inferior officers, the putative members still exercise their powers unconstitutionally.

*Unlawful Issuance of the Final Rule*

72. Amendment 54 and its implementing regulation were adopted by the 17 individuals who claim to be members of the Council but who were not appointed to that body pursuant to the Appointments Clause. The actions of these 17 individuals qua Council members are therefore void. Because the Final Rule was issued under provisions of the Magnuson-Stevens Act that require the Gulf Council to have first validly adopted an amendment and implementing regulation before the Secretary (or her delegate) may promulgate a regulation, the promulgation of the Final Rule was "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," "without observance of procedure required by law," and "contrary to constitutional right [and] power." 5 U.S.C. § 706(2); *see* U.S. Const. art. II, § 2, cl. 2.

**PRAYER FOR RELIEF**

Plaintiffs request the following relief:

1. A judgment declaring that the Final Rule is void because the 17 individuals purporting to be Council members were not appointed pursuant to the Appointments Clause and could not validly adopt Amendment 54 or its implementing

regulation, and that, without a validly adopted Council measure, the Secretary and NMFS lacked the power to promulgate the Final Rule;

      2.      A permanent prohibitory injunction setting aside the Final Rule and forbidding Defendants from enforcing it;

      3.      An award of reasonable attorney fees and costs, pursuant to 28 U.S.C. § 2412, or any other applicable authority; and

      4.      An award of any further relief that this Court deems just and proper.

Dated: June 30th, 2023.                      Respectfully submitted,

                                            *s/ Charles E. Cowan*
CHARLES E. COWAN
Miss. Bar No. 104478
Wise Carter Child & Caraway, P.A.
401 East Capitol Street
Heritage Building, Suite 600
Jackson, MS 39201
Telephone: (601) 968-5500
Facsimile: (601) 968-5593
cec@wisecarter.com

*Counsel for Plaintiffs*